UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
WATERKEEPER ALLIANCE, INC.; WATERKEEPERS     :
CHESAPEAKE, INC.; and CALIFORNIA             :
COASTKEEPER d/b/a CALIFORNIA COASTKEEPER     :
ALLIANCE,                                    :
                                             :
                                             :
                    Plaintiffs,              :
                                             :     19 Civ. 899 (LJL)
                                             :
            v.                               :
                                             :
UNITED STATES ENVIRONMENTAL PROTECTION       :
AGENCY; and ANDREW WHEELER, in his official  :
capacity as Administrator of the United States :
Environmental Protection Agency,             :
                                             :
                    Defendants.              :
------------------------------------------------------------------------ x

## SETTLEMENT AGREEMENT

WHEREAS, on January 30, 2019, Plaintiffs Waterkeeper Alliance, Inc., Waterkeeper

Chesapeake, Inc., and California Coastkeeper d/b/a California Coastkeeper Alliance

("Plaintiffs") filed their complaint ("Complaint") in this matter against the United States

Environmental Protection Agency and Andrew Wheeler, in his official capacity as Administrator

of the EPA (collectively, "EPA") under the Safe Drinking Water Act, 42 U.S.C § 300j-8(a)(2),

and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706;

WHEREAS, the Complaint alleges that the EPA failed to perform the following alleged

nondiscretionary duties required by the Safe Drinking Water Act, 42 U.S.C. §§ 300f–300j-26

("SDWA" or the "Act"): (1) make a fourth regulatory determination with respect to previously

unregulated contaminants pursuant to 42 U.S.C. § 300g-1(b)(1)(B)(ii)(II); (2) publish a Fifth

Contaminant Candidate List (CCL) pursuant to 42 U.S.C. § 300g-1(b)(1)(B)(i)(I); and (3) review

and revise National Primary Drinking Water Regulations ("NPDWRs") for tetrachloroethylene,

trichloroethylene, chromium, chlorite, *Cryptosporidium*, haloacetic acids, heterotrophic bacteria,

*Giardia lamblia*, *Legionella*, total trihalomethanes, and viruses pursuant to 42 U.S.C. § 300g-1(b)(9), every six years.

WHEREAS, the Complaint further alleges that the EPA violated the APA by unreasonably delaying (1) review of the NPDWR for chromium, (2) a determination to revise or not revise the NPDWR for chromium, and (3) completion of the health assessment of chromium. In the alternative, the Complaint alleges that the EPA's review or determination with respect to the existing NPDWR for chromium was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law;

WHEREAS, the Complaint further alleges that the EPA violated the APA by: (1) unreasonably delaying publication of a fourth final regulatory determination with respect to at least five contaminants listed on the fourth Contaminant Candidate List; (2) unreasonably delaying publication of a fifth Contaminant Candidate List;  (3) unlawfully withholding and unreasonably delaying proposing and promulgating revised NPDWRs for tetrachloroethylene and  trichloroethylene; (4) unreasonably delaying proposing revised NPDWRs for chlorite, cryptosporidium, haloacetic acids, heterotrophic bacteria, giardia lamblia, legionella, total trihalomethanes, and viruses;

WHEREAS, the EPA does not admit any allegation of fact or law alleged in the Complaint;

WHEREAS, Plaintiffs and the EPA wish to enter into this Agreement to avoid protracted and costly litigation, and to preserve judicial resources;

NOW, THEREFORE, the Parties hereby stipulate and agree as follows:

I.    **DEFINITIONS**

1.    Unless otherwise noted, the following definitions apply in this Settlement Agreement, and for purposes of this Agreement alone:

(a) "Plaintiffs" means Waterkeeper Alliance, Inc., Waterkeeper Chesapeake, Inc., and California Coastkeeper d/b/a California Coastkeeper Alliance.

(b) "EPA" means the United States Environmental Protection Agency and its Administrator, Andrew Wheeler, in his official capacity, or his successor.

(c) The "Parties" to this Agreement are Plaintiffs and the EPA.

(d) "Six-Year Review" refers to the EPA's review of existing NPDWRs to determine which, if any, are appropriate for revision pursuant to 42 U.S.C. § 300g-1(b)(9).

(e) "Contaminant Candidate List" refers to the listing of contaminants described in Section 1412(b)(1)(B)(i) of the SDWA, 42 U.S.C.  § 300g-1(b)(1)(B)(i).

(f) "NPDWR" means National Primary Drinking Water Regulation, as that term is used in Section 1412 of the SDWA, 42 U.S.C. § 300g-1.

(g) "MDBPs" means the following microbial and disinfection byproduct contaminants identified in the EPA's Six-Year Review 3: Chlorite, *Cryptosporidium*, *Giardia lamblia*, Haloacetic Acids (HAA5), Heterotrophic Bacteria, *Legionella*, Total Trihalomethanes ("TTHM"), Viruses. 82 Fed. Reg. 3518, 3526 (Jan. 11, 2017).

(h) "SDWA" or the "Act" means Safe Drinking Water Act, 42 U.S.C. §§ 300f–300j-26.

(i) "National Drinking Water Advisory Council" refers to the council established pursuant to Section 1446 of the SDWA, 42 U.S.C. § 300j-5, to advise, consult with, and make recommendations to the Administrator on matters relating to activities, functions, and policies of the Agency under the Act.

## II.    EPA ACTIONS AND DEADLINES

2.    No later than March 13, 2020, the EPA shall sign for publication in the *Federal Register* its proposed regulatory determinations for at least five of the contaminants that are

listed on the Fourth Contaminant Candidate List published on November 17, 2016, 81 Fed. Reg. 81099.

3.      No later than November 17, 2026, the EPA shall sign for publication in the *Federal Register* the Fifth and Sixth Contaminant Candidate Lists.  The Fifth Contaminant Candidate List is expected to be signed for publication in the *Federal Register* by July 18, 2022.

4.      No later than three years after the completion of the EPA's final Integrated Risk Information System ("IRIS") assessment for Hexavalent Chromium, the EPA shall make a determination as to whether the existing NPDWR for chromium is appropriate for revision based on the final IRIS assessment.

5.      (a)      Except as provided in subparagraphs 5(c), (d), (f), or (g), no later than July 31, 2024, the Administrator shall sign for publication in the *Federal Register* a proposal to revise the NPDWRs for the microbial and disinfection byproduct contaminants identified in subparagraph 1(g) and the EPA's Six-Year Review 3, published on January 11, 2017 (82 Fed. Reg. 3518).

(b)      Except as provided in subparagraph(s) 5(c), (d), (e), (f), or (g), no later than September 30, 2027, the Administrator shall sign for publication in the *Federal Register* a notice of final action on the proposal for revised NDPWRs identified in subparagraph 5(a).

(c)      The deadlines for signature of a proposal and final action in subparagraphs 5(a) and 5(b) will each be extended by 12 months if the EPA decides, in its sole discretion, to seek recommendations from a Federal Advisory Committee established pursuant to the Federal Advisory Committee Act, or if the EPA requests, and the National Drinking Water Advisory Council agrees, to establish a subcommittee to provide advice to EPA on the development of the proposal identified in subparagraph 5(a).  The EPA will notify Plaintiffs in writing if the Agency decides to exercise this provision.

(d)     The deadlines for signature of a proposal and final action in subparagraphs 5(a) and 5(b) will each be extended by 18 months if the EPA, in its sole discretion, determines to conduct a rulemaking to collect information relevant to the MDBP rule revisions prior to publication of the proposal identified in paragraph 5(a).  The EPA will notify Plaintiffs in writing if the Agency decides to exercise this provision.

(e)     The deadline for signature of a notice of final action in subparagraph 5(b) will be extended by 18 months if the EPA determines, in its sole discretion, to publish in the *Federal Register* and seek public comment on either a Notice of Data Availability or a modified proposal.  The EPA will notify Plaintiffs in writing if the Agency decides to exercise this provision.

(f)     If, at any time, the EPA determines that the existing NPDWRs for the MDBPs are no longer appropriate for revision, the EPA will notify Plaintiffs accordingly and announce that determination in the Agency's next Six-Year Review or as part of a rulemaking activity.   Any determination under this paragraph will supersede any deadline in paragraph 5.

(g)     All potential extensions in this paragraph are cumulative.

(h)     Any deadline that falls under this Agreement that falls on a Saturday, Sunday, or federal holiday, will be the next business day.

6.     Within 12 months of the Effective Date and annually thereafter, the EPA shall provide Plaintiffs with a written annual report describing the EPA's progress in meeting the deadlines in Paragraphs 2-5 and any delays or anticipated delays in meeting those deadlines.

## III.     DISMISSAL OF ACTION

7.     Within 10 business days after this Agreement's execution, the Parties shall file a joint motion with the Court notifying it of this Agreement and submit a proposed order (attached hereto as **Exhibit A**) seeking dismissal with prejudice of all claims in this action.  If the Court

does not enter such an order, this Agreement shall have no force or effect.  Notwithstanding this

dismissal of claims, however, the Plaintiffs shall have the right to reopen this action under the

circumstances described in Paragraph 8 of this Agreement.

## IV.    REMEDIES FOR BREACH

8.    If the EPA fails to meet any of the deadlines set forth in Paragraphs 2 through 5,

Plaintiffs' sole remedy under this Agreement shall be to reopen this lawsuit after undertaking the

informal dispute-resolution procedures described in Paragraph 9.  The EPA does not waive or

limit any defense relating to such re-opened litigation.  The Parties agree that contempt of court

is not an available remedy for a breach of this Agreement, and that this Agreement is not

specifically enforceable.

9.    If a Party believes that the other Party has failed to comply with any term or

condition in this Agreement, or if there is any dispute or controversy about any part of this

Agreement, the Parties shall use their best efforts to settle and resolve the controversy.  To that

end, the Party raising the dispute shall give written notice to the other Party stating the nature of

the matter to be resolved and the position of the Party asserting the controversy.  This written

notice will start an informal dispute-resolution period that will be no shorter than 60 days, and

may be extended by the Parties' mutual agreement.  The Parties shall consult and negotiate with

each other in good faith and, recognizing their mutual interests in the ongoing integrity of this

Agreement, attempt to reach a just and equitable resolution satisfactory to all Parties.

## V.    LIMITATIONS

10.    Nothing in this Agreement shall be construed to confer upon a district court

jurisdiction to review any decision to be made by the EPA pursuant to this Agreement that would

not otherwise be reviewable by a district court, or to otherwise confer upon a district court

jurisdiction to review any issues that are within the exclusive jurisdiction of the United States Courts of Appeals under section 1448(a) of the SDWA, 42 U.S.C. § 300j-7.

11.    Nothing in this Agreement shall constitute or be interpreted to constitute a commitment or requirement that the EPA obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or take actions in contravention of the Administrative Procedure Act, 5 U.S.C. §§ 551–559, 701–706, the SDWA, or any other law or regulation, either substantive or procedural.

12.    Except as expressly provided herein, or in any supplement to this Agreement, nothing in this Agreement shall be construed to limit or modify the discretion accorded the EPA by the SDWA or by general principles of administrative law, including the discretion to alter, amend, or revise any response or final action contemplated by this Agreement. The EPA's obligation to perform the actions specified in Paragraphs 2, 3, 4, and 5 of this Agreement by the times specified therein does not constitute a limitation or modification of the EPA's discretion within the meaning of this paragraph.

13.    If a subsequent change in law alters or relieves the EPA of any of its obligations concerning the matters addressed in this Agreement, the Parties shall amend this Agreement to conform to such changes.

**VI.    *FORCE MAJEURE***

14.    The Parties recognize that the performance of this Agreement is subject to fiscal and procurement laws and regulations of the United States, which include but are not limited to the Anti-Deficiency Act, 31 U.S.C. §§ 1341, *et seq.* The possibility exists that unforeseeable circumstances outside of the EPA's reasonable control could delay compliance with the deadlines set forth in this Agreement, despite the EPA's best efforts to comply with this Agreement. Should a delay occur due to such circumstances, any resulting failure by the EPA to

meet the dates set forth in Paragraphs 2, 3, 4, and 5 above shall not constitute a failure to comply with the terms of this Agreement by the EPA.  In the event that the EPA invokes (or intends to invoke) this provision of the Agreement, the EPA will provide Plaintiffs with timely notice detailing the circumstances that the EPA believes demonstrate that compliance is beyond its reasonable control, and detailing the steps the EPA intends to take to remove and/or mitigate the Force Majeure.

15.     The Parties recognized that the possibility exists that a lapse in the appropriations that fund the EPA could delay compliance with the timetables in this Agreement.  If a lapse in appropriations for the EPA occurs within 120 days before any deadline in this Agreement, including but not limited to the periods set forth in Paragraphs 2 through 5, that deadline and each subsequent deadline under the Agreement shall be extended automatically one day for each day of the lapse in appropriations.  Nothing in this paragraph shall preclude the EPA from seeking an additional extension pursuant to Paragraph 14 or Paragraph 23.

## VII.    REPRESENTATIVE AUTHORITY

16.     The individuals signing this Agreement on behalf of the Parties hereby certify that they are authorized to bind their respective parties to this Agreement.

## VIII.   CHOICE OF LAW

17.     This Agreement shall be governed and construed under the laws of the United States.

## IX.     GENERAL PROVISIONS

18.     This Agreement was negotiated among the Parties in good faith and was jointly drafted by the Parties.

19.     This Agreement contains all the terms and conditions agreed upon by the Parties in connection with the settlement of this action pursuant to this Agreement.  All statements,

representations, promises, agreements, or negotiations, oral or otherwise, among the Parties or counsel in relation to resolving this action through this Agreement that are not included herein are specifically superseded by this Agreement and shall have no force or effect.

20.    This Agreement applies to, is binding upon, and inures to the benefit of the Parties and their respective successors, assigns, and designees.

21.    Nothing in this Agreement shall be construed to make any other person or entity not executing this Agreement a third-party beneficiary to this Agreement.

22.    This Agreement shall not constitute or be construed as an admission or adjudication by the United States, EPA or Plaintiffs of any question of fact or law with respect to any of the claims raised in this or any other action.  Nor is it an admission of violation of any law, rule, regulation, or policy by the United States or EPA.  Plaintiffs expressly reserve the right to challenge in any proper forum on any ground the lawfulness of any final action the EPA takes with respect to the matters addressed in this Agreement.

23.    This Agreement may be modified by written agreement of the Parties.  Any amendment will be effective upon execution by the Parties.

## X.    ATTORNEY'S FEES

24.    The EPA agrees that it is appropriate within the meaning of SDWA § 1449(d), 42 U.S.C. § 300j-8(d), for Plaintiffs to recover reasonable attorney fees and costs accrued as of the Effective Date of this Agreement.  The Parties will attempt to reach agreement as to the appropriate amount of Plaintiffs' attorney's fees and costs.  If they are unable to do so, Plaintiffs may file an application with the Court for the recovery of reasonable fees and costs within 120 days of the Effective Date of this Agreement, or by such later date as set by the Court upon motion or otherwise, the EPA shall have 45 days to respond to such application, and Plaintiffs shall have 20 days to reply, subject to Court approval of that schedule.

**XI.     NOTICE**

25.     Any notices required or provided for by this Agreement shall be made in writing and shall be effective upon receipt.  For any matter relating to this Agreement, the contact persons are:

<u>For Plaintiffs</u>:

Reed W. Super, Esq.
Super Law Group, LLC
180 Maiden Lane, Suite 603
New York, New York 10038
Phone: (212) 242-2273
Fax: (855) 242-7956
reed@superlawgroup.com

<u>For EPA</u>:

Tomoko Onozawa
Assistant United States Attorney
U.S. Attorney's Office, Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Phone: (212) 637-2721
Fax: (212) 637-2717
tomoko.onozawa@usdoj.gov

Associate General Counsel
Water Law Office
Office of General Counsel
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
MC-2355A
Washington, DC 20460

Leslie Darman
Water Law Office
Office of General Counsel
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
MC-2355A
Washington, DC 20460
darman.leslie@epa.gov

Upon written notice to the other parties, any party may designate a successor contact person for any matter relating to this Agreement.

**XII.    EFFECTIVE DATE**

26.    The Effective Date of this Agreement shall be the date on which this Court approves the proposed Order referenced in Paragraph 7 of this Agreement and attached hereto as Exhibit A.

**FOR PLAINTIFFS WATERKEEPER ALLIANCE, INC.; WATERKEEPERS CHESAPEAKE, INC.; and CALIFORNIA COASTKEEPER d/b/a CALIFORNIA COASTKEEPER ALLIANCE:**

Dated: May 29, 2020

REED W. SUPER
Super Law Group, LLC
180 Maiden Lane, Suite 603
New York, New York 10038
Telephone: (212) 242-2273

**FOR EPA:**

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York

Dated: May 29, 2020          By:

TOMOKO ONOZAWA
Assistant United States Attorney
86 Chambers Street, Third Floor
New York, New York 10007
Tel: (212) 637-2721

Of Counsel for the United States
Environmental Protection Agency:

Leslie J. Darman
Office of General Counsel
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Mail Code 2355A
Washington, D.C. 20460

-12-

**EXHIBIT A**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x
WATERKEEPER ALLIANCE, INC.; WATERKEEPERS    :
CHESAPEAKE, INC.; and CALIFORNIA    :
COASTKEEPER d/b/a CALIFORNIA COASTKEEPER    :
ALLIANCE,    :
     :
              Plaintiffs,    :
     :  19 Civ. 899 (LJL)
      v.    :
     :
UNITED STATES ENVIRONMENTAL PROTECTION    :
AGENCY; and ANDREW WHEELER, in his official    :
capacity as Administrator of the United States    :
Environmental Protection Agency,    :
     :
           Defendants.    :
------------------------------------------------------------------------- x

**[PROPOSED] ORDER DISMISSING THE COMPLAINT**

WHEREAS, plaintiffs and defendants have advised the Court that, on [DATE], they

executed a settlement agreement (the "Agreement"), attached hereto as Exhibit A, resolving

their disputes in this action.

IT IS HEREBY ORDERED that:

1.  Subject to paragraphs 2 and 3 of this Order, this Complaint is dismissed in its entirety

    with prejudice;

2.  Notwithstanding paragraph 1 of this Order, in the event that defendants fail to comply

    with paragraphs 2, 3, 4 or 5 of the Agreement, plaintiffs shall have the right to reopen

    this action pursuant to paragraph 8 of the Agreement

3.  The Court shall have jurisdiction to reopen this action in accordance with paragraph 2

    of this Order.

4.  Notwithstanding the dismissal of this action, the Court retains jurisdiction following the dismissal to resolve any claims by plaintiffs against defendants for reasonable attorney fees and costs pursuant to 42 U.S.C. § 300j-8(d), provided that an application for fees and costs is filed within 120 days of the date on which this Court enters this Order.

SO ORDERED:

_____
HON. LEWIS J. LIMAN
United States District Judge

Dated: _____, 2020